UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 6:13-cr-00430-AA |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| HUMBERTO MOISES RODRIGUEZ, | |
| Defendant. | |

AIKEN, Chief Judge:

Defendant is charged with possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1). Defendant moves to suppress all evidence obtained directly and indirectly from a search following a traffic stop, arguing that the stop violated his rights under the Fourth Amendment. The government opposes the motion and contends that probable cause existed for the traffic stop and that the length of stop was not an unreasonable seizure under the Fourth Amendment. The motion is denied.

1   - OPINION AND ORDER

BACKGROUND

On April 10, 2012, Oregon State Police (OSP) Trooper Clayton Stevens was on patrol in Ontario, Oregon at approximately 1:10 a.m. He saw a vehicle driving without tail lights and effectuated a traffic stop. Trooper Stevens contacted the driver, introduced himself, and told the driver the reason for the stop.

The driver, Jesusa Castilleja, provided Trooper Stevens with her driver's license, indicating that the address on her license was not her current address. Trooper Stevens asked for the vehicle registration and proof of insurance. Castilleja was unable to locate the registration and produced an expired insurance card.

Defendant was in the vehicle's front passenger seat. While Castilleja was looking for the registration and insurance documents, Trooper Stevens noticed that defendant was not wearing his seatbelt and was holding the belt so that it appeared to be buckled.

Trooper Stevens asked defendant if there was any reason he did not have his seatbelt buckled, and defendant responded there was "no reason." Trooper Stevens asked if he could see defendant's identification, and defendant provided it. Trooper Stevens told Castilleja that while she kept looking for the registration and insurance, he would attempt to obtain the information based on her license plate number.

At approximately 1:13 a.m., Trooper Stevens returned to his

2    - OPINION AND ORDER

patrol car and ran a records check on both Castilleja and
defendant. Trooper Stevens was informed that both subjects had
driving privileges and no outstanding warrants, and that defendant
was a felon offender on supervision in Malheur County.

At 1:17 a.m., Trooper Stevens returned to the vehicle to ask
Castilleja for her current address. He noticed that defendant had
changed positions and was attempting to conceal an alcoholic
beverage in his sweatshirt. Trooper Stevens returned to his vehicle
and called dispatch to inquire whether defendant had a no-alcohol
condition on his supervision, and he did.

At approximately 1:20 a.m., Trooper Stevens called to obtain
the phone number for the on-call probation officer. Trooper Stevens
eventually reached a probation supervisor and advised him that
defendant had a no-alcohol condition of supervision and was
apparently trying to hide a can of beer. The supervisor said that
he would not authorize a detainer for alcohol and asked that
defendant be told to report to the probation office the next
morning. Trooper Stevens said that he was going to ask for consent
to search the vehicle, and the probation supervisor advised Trooper
Stevens to take defendant into custody if drugs were found.

At approximately 1:25 a.m., Trooper Harris arrived, apparently
in response to a call for backup. Trooper Stevens told Trooper
Harris that he believed defendant was probably a gang member and
described the conversation with the probation supervisor. Trooper

3   - OPINION AND ORDER

Stevens also stated that he intended to seek consent to search the vehicle.

Trooper Stevens approached defendant on the passenger side of the vehicle and observed two alcohol containers, one of which was opened. Trooper Stevens asked defendant about the alcohol and also asked defendant to step out of the vehicle.

Defendant opened the door and a prescription bottle fell out of the vehicle and onto the ground. Trooper Stevens repeatedly told defendant to remain in the vehicle and to put his hands on the dash. Trooper Stevens saw that the bottle contained a clear plastic bag with marijuana. Trooper Stevens then explained to defendant that he would be arrested. At this point, the time was 1:27 a.m.; almost eighteen minutes from the initial stop.

After defendant stepped out of the vehicle, he suddenly ran away. Trooper Stevens caught defendant, and after both troopers subdued defendant, he was placed in handcuffs.

The troopers searched defendant and found a pocket knife in his pants pockets and almost one ounce of methamphetamine in his sweatshirt. On the ground, the troopers located a small tin containing methamphetamine, packaging material and a small spoon.

DISCUSSION

Defendant moves to suppress all evidence obtained directly and indirectly as a result of the traffic stop and search of defendant. Defendant argues that the government must establish probable cause

for the stop, and that Trooper Stevens unlawfully extended the duration of the stop.

Generally, police officers may stop a vehicle if they have probable cause or reasonable suspicion "to believe that a traffic violation has occurred." Whren v. United States, 517 U.S. 806, 810 (1996); United States v. Miranda-Guerena, 445 F.3d 1233, 1236 (9th Cir. 2006) ("An investigatory stop of a vehicle is reasonable under the Fourth Amendment if the officer reasonably suspects that a traffic violation has occurred."). Here, the lack of lighted tail lights on Castilleja's car provided probable cause to effectuate a traffic stop. Regardless of whether the lights were inoperable or simply not turned on, Trooper Stevens had a reasonable belief that a traffic violation had occurred. Or. Rev. Stat. §§ 816.320(1)(b), 816.330.

Defendant next argues that Trooper Stevens extended the duration of the stop without reasonable basis, because he had sufficient information to issue a citation for the traffic violation within a few minutes of the initial stop. However, neither drivers nor passengers "'ha[ve] a right to be released the instant the steps to check license, registration, and outstanding warrants, and to write a ticket, ha[ve] been completed.'" United States v. Turvin, 517 F.3d 1097, 1103 (9th Cir. 2008) (quoting United States v. Childs, 277 F.3d 947, 953 (7th Cir. 2002)).

Rather, an officer may ask questions which prolong a traffic

stop if there is reasonable suspicion of criminal activity, id. at 1100-01, or if "new grounds for suspicion of criminal activity continue[] to unfold." United States v. Mayo, 394 F.3d 1271, 1276 (9th Cir. 2005). Further, "'[q]uestions that hold potential for detecting crime, yet create little or no inconvenience, do not turn reasonable detention into unreasonable detention.'" Turvin, 517 F.3d at 1103 (quoting Childs, 277 F.3d at 954); see also United States v. Mendez, 476 F.3d 1077, 1080 (9th Cir. 2007). Ultimately, the court must conduct a "fact-specific reasonableness inquiry" in light of the "totality of the circumstances." Id. at 1101.

Here, Castilleja did not possess the vehicle's registration or proof of valid insurance, and she stated that the address on her driver's license was not current. Therefore, Trooper Stevens was justified in returning to the vehicle to obtain Castilleja's current address after he ran a records check. Trooper Stevens then noticed that defendant, a felon on supervision, was attempting to conceal an alcoholic beverage. Trooper Stevens thus had a reasonable basis to contact dispatch and the probation supervisor to inquire about a no-alcohol condition of supervision.

Moreover, "there is no strict time requirement" for a traffic stop. Mayo, 394 F.3d at 1276. In other cases, the Ninth Circuit has found a fourteen-minute stop and forty minutes of questioning reasonable under the circumstances. Turvin, 517 F.3d at 1101-03; Mayo, 394 F.3d at 1275-76. Here, the stop lasted approximately

eighteen minutes, and the length of the stop was reasonable in light of Trooper Stevens's calls to dispatch and the probation supervisor. "'We underline that the police are not constitutionally required to move at top speed or as fast as possible. For the police to be vigilant about crimes is, at least broadly speaking, a good thing.'" Turvin, 517 F.3d at 1102 (quoting United States v. Hernandez, 418 F.3d 1206, 1212 n.7 (11th Cir. 2005) (citations omitted)).

Defendant nonetheless emphasizes that Trooper Stevens suspected defendant was a gang member and intended to request consent to search the vehicle, implying that he had ulterior motives in extending the length of the stop. However, it is undisputed that defendant was a felon on supervision and attempting to conceal a container of alcohol. Thus, regardless of Trooper Stevens's suspicion about gang affiliation, he had a reasonable basis to make further inquiry into defendant's conditions of supervision. Further, officers routinely seek consent to search vehicles, and I find that any intent to do so in this case has little relevance to the issues raised in defendant's motion.

In sum, I find that Trooper Stevens's actions were reasonable. He articulated specific factors which supported reasonable suspicion to further question defendant and contact a probation supervisor. As a result, the duration of the stop was reasonable, and evidence obtained as a result is admissible.

7    - OPINION AND ORDER

CONCLUSION

Defendant's Motion to Suppress Evidence (doc. 58) is DENIED.

IT IS SO ORDERED.

Dated ___11th___ day of June, 2014.


_____
Ann Aiken
United States District Judge

8    - OPINION AND ORDER